IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VERNON C. WHITE,<br><br>Plaintiff,<br><br>vs.<br><br>MADISON COUNTY, ILLINOIS, CHIEF ROBERT HERTZ, CHIEF DEPUTY LAKIN, CAPT. JOSEPH GULASH, LT. HALLENBECK, DR. ROBERT BLANKENSHIP, NURSES & JAILERS A-Z, in Their Official and Individual Capacities, VILLAGE OF PONTOON BEACH, ILLINOIS, CHIEF CHARLIE LUEHMANN, LT. DANIEL ABEL, DET. RICHARD SCHARDAN, and OFC. JOHN SIMMONS, in Their Official Capacity and Individual Capacities,<br><br>Defendants. | Case No. 07-CV-716-MJR |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### I. Background[1]

This case arises under 42 U.S.C. § 1983 and under the constitution and laws of the State of Illinois. In a ten-count complaint, Plaintiff, Vernon C. White, challenges Defendants' alleged unreasonable search and seizure, deprivation of liberty and property without due process, and willful and wanton failure to provide medical care, as well as illegal conspiracy against him and

---

[1] For purposes of clarity and completeness, the Court will here restate the background alleged in White's Complaint. *See* Order, Doc. 44.

1

coercing a confession from him. He claims that, on October 15, 2006, Defendant Simmons pulled him over for "dirt on his tag." Simmons then arrested White for a "felony traffic stop" in spite of the fact that Simmons's "LEAD monitor" showed a warrant for White that read "DO NOT ARREST." Defendant Daniel Abel then arrived, checked the VIN number on the truck that White was driving and reported to Simmons that the truck was reported as stolen. White explained that he had purchased the truck and that his pink slip and other proofs of ownership were in the truck. White told Simmons and Abel that he had been exposed to tuberculosis years before but assured them that he did not have the disease. White also told Simmons and Abel that he suffered from epileptic seizures. He asked them to get his medicine from the truck, but they refused. Also in the truck were White's laptop computer, tools, notes and equipment.

White was transferred to Madison County Jail where he was seen by a nurse and jailors. He provided them with his medical history, including that he was an epileptic, his list of medications and the name of his personal physician. None of the Defendants provided White with medication for his epilepsy during his detention. He was taken to a cellar below the Madison County Women's Jail that had neither lights, beds and toilets nor sufficient room to stand. There, within the next two days, he suffered a grand mal seizure, injured his left occipital lobe and lost vision in his right eye. When White complained of the conditions of his confinement and the lack of medical care, Defendant Gulash, Madison County's Jail Superintendent, told him that he was in segregation "for precautionary measures," even though Madison County's own X-rays and sputum tests had proven that White did not have tuberculosis.

The jail's doctor, Defendant Blankenship, did not prescribe any medication for White's seizures. White was detained in a segregation unit from approximately October 17 to

November 6, 2006. On November 8, 2006, when White appeared before a Madison County Judge, he was not informed of his rights and was coerced into accepting a plea agreement. He pled guilty to theft over $300.00 for possession of the truck without the consent of its owner.

On February 17, 2007, White learned that Madison County did not know the location of the truck or his personal effects, which were exculpatory and were valued at more than $11,000.00. As a direct and proximate result of Defendants' willful, wanton and oppressive conduct, White suffered personal injury, loss of freedom, loss of property, indignity, mental suffering, emotional strain and humiliation. Defendants, Madison County, Illinois, and Sheriff Robert Hertz, erroneously named as Chief Robert Hertz, move to dismiss the claims against them. (Doc. 45).

**II.     Legal standard**

The dismissal motion fails to identify the particular Federal Rule of Civil Procedure under which dismissal is sought. The motion suggests that dismissal is sought for failure to state a claim pursuant to rule 12(b)(6), by asserting that White's "allegations are insufficient" (implying that White fails to state a claim). In assessing whether a complaint states a claim upon which relief can be granted (thereby escaping Rule 12(b)(6) dismissal), the district court accepts all well-pleaded allegations as true and draws all reasonable inferences in plaintiff's favor. ***Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). *See also Erickson v. Pardus*, – U.S. –, 127 S.Ct. 2197, 2200 (2007).** No longer does it suffice for a complaint to avoid foreclosing possible bases for relief; the complaint must indicate that the plaintiff *has* a right to relief. ***EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 777 (7th Cir. 2007).**

Specific facts are not necessary for a complaint to survive a motion to dismiss for

failure to state a claim. ***Jervis v. Mitcheff*, – F.3d –, 2007 WL 4355433 (Dec. 13, 2007).** But labels and conclusions alone will not suffice. Rather, the complaint must contain enough facts to state a claim that is plausible on its face, and the complaint must give the defendants "fair notice" of the grounds on which plaintiff's claim rests. ***Killingsworth,* 507 F.3d at 618.**

### III. Discussion

#### A. Sheriff Hertz

Hertz contends that dismissal of all claims against him is appropriate because White failed to allege that Hertz personally participated in the constitutional deprivations. Hertz asserts that rather than alleging personal participation, White alleges that Hertz "was the superior officer of all Madison County Sheriff's Department employees and a policy maker for ... Madison county, its Sheriff's Department, and its jail."

White responds that he adequately alleged Hertz's personal participation in the deprivation of his rights. White cites the following examples: 1) in Count II, he alleges that Hertz knew about White's epilepsy, knew he was not getting his medicine and did nothing about it; and 2) in Count VII, he alleges that Hertz knew of, approved and condoned placing White in a cell under inhumane conditions. Subsequent claims against Hertz include failure to intervene, conspiracy (both federal and state claims), coerced confession and willful and wanton failure to provide medical care. White has brought suit against Hertz in both his official and individual capacities.

Stated simply, a § 1983 claim requires the plaintiff to allege that a state actor deprived him of a federally-secured right. ***Mosely v. Board of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006);** *see also **Neuman v. McCoy*, 210 Fed.Appx. 542, 2006 WL 3804383 (7th Cir. 2006) (unpublished) (Section 1983 requires that the defendant's action, or inaction,**

**deprived the plaintiff of a right secured by federal laws or the federal constitution.)**. The parties do not dispute that, under § 1983, there is no *respondeat superior* liability. *See Perkins v. Lawson,* **312 F.3d 872, 875 (7th Cir. 2002)**.

In order to prevail on an individual capacity suit against Hertz, White must allege facts showing Hertz's participation in or direct responsibility for the actions and conditions of which he complains, *Starzenski v. City of Elkhart,* **87 F.3d 872, 879 (7th Cir. 1996)**, by demonstrating a causal link between Hertz's conduct and his injury. *Benson v. Cady,* **761 F.2d 335, 339 (7th Cir. 1985)**. He must allege facts showing that Hertz was aware of facts that put him on notice that White was exposed to a serious risk of harm and that White actually was harmed. *See Farmer v. Brennan,* **511 U.S. 825, 836 (1994) (The defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference.")**.

Among other claims, White alleges that Hertz knew about White's epilepsy, knew that he was not getting his medicine and took no action to avert the injury to him. White also alleges that Hertz approved and condoned placing him in a cell under inhumane conditions and failed to intervene to prevent harm to him.

In order to prevail on an official capacity suit against Hertz, White must allege facts showing that an official policy or custom caused the injury. *Id.* **(citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121-22 (1988))**. White "must point to either an express policy which caused the injury, a widespread practice that is so well-settled as to amount to a policy, or that the sheriff had the final policymaking authority for the decisions regarding the medical treatment Perkins received." *Id.* **(citing *Abbott v. Village of Winthrop Harbor,* 205 F.3d 976 (7th Cir.**

2000))**.

White alleges that Hertz is a policymaker for Madison County, its Sheriff's Department and Jail. White also alleges that Hertz and those entities had customs, policies and practices that violated ... federal rights ... and harmed plaintiff[.]"

On the record before it, the Court concludes that White's complaint contains enough facts to state a claim that is plausible on its face and indicates that he has a right to relief. The Court finds that it is better to wait and allow a more complete record to be developed before attempting to decide whether Hertz can be held liable on White's claims. White is entitled to engage in discovery to determine whether his claims against Hertz are meritorious. Hertz will have the opportunity, if he chooses, to renew his arguments at the summary judgment stage. Accordingly, the Court will deny Hertz's motion to dismiss, without prejudice, to allow the development of a more complete record.

### B. Madison County

Madison County contends that it should be dismissed from this lawsuit because it has no responsibility for the operation of the County Jail. According to Madison County, the Jail is under the operation of the Madison County Sheriff who, under Illinois law, is not a County employee. Furthermore, Madison County contends that no liability attaches to it under **Monell v. NYC Dept. of Social Servs., 436 U.S. 658 (1978)**, because the Sheriff, not the County, is the entity responsible for the jail and its operations.

White argues that the case relied upon by Madison County, **Moy v. County of Cook, 640 N.E.2d 926 (1994)**, applies only to state law claims and not to a federal action under § 1983. He contends that Madison County is liable for any injury proximately caused by members of the

sheriff's department under the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/4-105. Moreover, according to White, he has adequately alleged customs, policies and practices on the part of Madison County that violated White's federal rights. Lastly, White contends that Madison County is a necessary party in any suit seeking damages from a sheriff acting in his official capacity.

The Court finds that White reads *Moy* too narrowly. *Moy* has repeatedly been discussed approvingly by the Seventh Circuit in the context of § 1983 claims. **See , e. g., Franklin v. Zaruba, 150 F.3d 682, 685-86 n. 4 (7th Cir. 1998) (finding that county cannot be liable under § 1983 for sheriff's policies)**. The Illinois Supreme Court, in *Moy*, stressed the lack of control a county exercises over its sheriff and refused to hold the county vicariously liable for the sheriff's actions. ***Moy,* 640 N.E.2d at 929 ("The county is given no authority to control the office of the sheriff.")**; *see also Horstman v. County of DuPage,* **284 F.Supp.2d 1125, 1131-32 (N.D.Ill. 2003)**. "Although a county board may alter or impose additional duties upon county officers, the board may not 'alter the duties, powers and functions of county officers *that are specifically imposed by law.*'" ***Moy, ibid.* (citations omitted) (emphasis in original)**.

Thus, Madison County is correct that any policies promulgated by Hertz cannot be attributed to Madison County, and Madison County cannot be held liable under a *respondeat superior* theory. **See Carver v. Sheriff of LaSalle County, 787 N.E.2d 127, 136-37 (2003) ("... [S]heriffs answer to the electorate of the county from which they are elected, and not to the county board." ) (collecting cases)**; *see also Horstman,* **284 F.Supp.2d at 1131 (discussing *Moy* and dismissing *respondeat superior* claim against county)**. Finally, the Illinois Supreme Court relied upon *Moy* in holding that a county is not subject to liability under *Monell* in cases brought

pursuant to § 1983 for policies of the sheriff. *Franklin,* **150 F.3d at 685 (citing** *Ryan v. County of DuPage,* **45 F.3d 1090, 1092 (7th Cir. 1995) (holding that the sheriff is a policymaker for the county sheriff's office, not for the county itself))**.

Nonetheless, White is correct that Madison County is a proper defendant in the current proceeding. In *Carver v. Sheriff of LaSalle County, Illinois,* 243 F.3d 379 (7th Cir.2001) (" *Carver I* "), the Seventh Circuit "certified to the Supreme Court of Illinois the question of which state entity was responsible for paying 'official-capacity judgments in Illinois when the wrongdoer is an independently-elected officer.'" *Robinson v. Sappington,* 351 F.3d 317, 338 (7th Cir. 2003) (citing *Carver,* 243 F.3d at 381). The Illinois Supreme Court determined that "[b]ecause the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff's office in an official capacity." *Id.* **at 339 (citing** *Carver v. Sheriff of La Salle County,* **787 N.E.2d 127, 141 (2003) (" *Carver II* ")**. The Seventh Circuit noted that the Supreme Court of Illinois's answer "implie[d] an additional point of federal law: that a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity." *Id.* **(citing FED. R .CIV. P. 17, 19 and** *Carver v. Sheriff of LaSalle County, Illinois,* **324 F.3d 947, 948 (7th Cir. 2003) ("*Carver III*")**.

Based on this analysis, Madison County will be obligated to pay any judgment against the Sheriff's Office. Because Madison County has a financial interest in the outcome of the litigation, it is a necessary party to the litigation and must not be dismissed. *See Cobbs v. Sheahan,* **2003 WL 22514523, at *1 (N.D.Ill. 2003) ("Because state law requires the county to pay if a plaintiff is successful in such a suit, the county must be named as a defendant so that it may veto potential settlements proposed at its expense.")**.

In accordance with the Court's analysis under *Moy*, Madison County cannot be "held vicariously liable for the sheriff's alleged negligent conduct," but is a named defendant because of its duty to indemnify the Sheriff's Office for judgments rendered against it. ***Cooper v. Office of Sheriff of Will County*, 333 F.Supp.2d 728, 737 (quoting *Moy*, 640 N.E.2d at 931)**. To the extent that White's amended complaint suggests otherwise, it must be amended accordingly.

### IV. Conclusion

For the reasons set forth above, the Court **DENIES** Defendants' motion to dismiss (Doc. 49). White is ordered to file a second amended complaint in compliance with this opinion on or before September 8, 2008.

**IT IS SO ORDERED.**

**DATED this 14th day of August, 2008**

**s/Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**