IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **VERNON C. WHITE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 07-cv-0716-MJR |
| | ) | |
| **MADISON COUNTY, ILLINOIS, CHIEF ROBERT HERTZ, CHIEF DEPUTY LAKIN, CAPT. JOSEPH GULASH, LT. HALLENBECK, DR. ROBERT BLANKENSHIP, in Their Official and Individual Capacities, VILLAGE OF PONTOON BEACH, ILLINOIS, CHIEF CHARLIE LUEHMANN, LT. DANIEL ABEL, DET. RICHARD SCHARDAN, and OFC. JOHN SIMMONS, in Their Official Capacity and Individual Capacities,** | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM and ORDER

**REAGAN, District Judge:**

   I.   **Introduction and Procedural Background**

The above-captioned civil rights action was brought by Plaintiff Vernon C. White against 11 named Defendants, after Plaintiff was stopped and arrested by Pontoon Beach, Illinois, police officers and subsequently transported and housed at the Madison County Jail. In October 2009, Plaintiff dismissed all claims against the "Pontoon Beach defendants" (Docs. 109, 110). Approximately two weeks later, on the eve of trial, Plaintiff voluntarily dismissed the remaining claims against the "Madison County defendants"

1

(Docs. 120, 121). The "Madison County defendants" - Madison County, Illinois, Sheriff Robert Hertz, Chief Deputy Lakin, Captain Joseph Gulash, Lieutenant Hallenbeck and Dr. Robert Blankenship - are now before the Court seeking an award of attorney's fees ($62,129.50), pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 (Doc. 122).

Defendants note that Plaintiff consistently alleged that he was epileptic and took Tegretol and Dolophine daily to treat his seizures, and that because he was denied those medications while in custody, he suffered a grand mal seizure, injured his left occipital lobe and lost vision in his right eye (Doc. 2, pp. 5-6, ¶¶ 24-26; Doc. 75, pp. 5-6, ¶¶ 24-26). In essence, Defendants argue that they endured two amendments of the complaint and two years of vexatious discovery only to have Plaintiff dismiss the case on the eve of trial and after they learned that Plaintiff had apparently not taken anti-seizure medication for the 15-year period preceding his arrest and that he may never have been diagnosed with epilepsy. Defendants assert that, "had Plaintiff's attorney made a reasonable inquiry as to whether Plaintiff had medical evidence supporting his allegations, Defendants' costs in defending this suit could have been wholly avoided from the outset" (Doc. 122, p. 11). Defendants highlight that they lost a $650 deposit when they were forced to cancel the deposition of Dr. Robert Segal after confusion arose regarding whether Dr. Segal had ever treated Plaintiff, and after Plaintiff retracted a prior designation of Dr. Segal as a non-retained expert witness.

Plaintiff's counsel, Nelson L. Mitten, opposes the motion for attorney's fees, arguing:

1. The motion for Rule 11 sanctions is untimely;

2. Rule 11 is not a proper method for seeking sanctions for discovery violations; and

3. Sanctions are not warranted because

    a. Mitten did not enter his appearance in the case until April 10, 2009, after the final amendment of the complaint, and after the various compulsion orders had been issued;

    b. Shortly after Mitten's appearance in the case, requested discovery was produced and no additional motions to compel were filed by Plaintiff; and

    c. The confusion regarding Dr. Segal was unavoidable, in that Dr. Segal initially denied having treated Plaintiff, only to later confirm that he had treated Plaintiff, and Plaintiff's counsel only learned on the eve of the deposition that Dr. Segal had no independent recollection of treating Plaintiff (Doc. 126).

**II. Applicable Legal Standards**

Federal Rule of Civil Procedure 11 provides in pertinent part that, by presenting a pleading, written motion or other paper to the Court, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the pleading, motion or paper is not presented to harass or cause needless delay, or needlessly increase the cost of litigation, and the claims or other legal contentions are warranted, and the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. **Fed.R.Civ.P. 11(b).**

Counsel's liability for excessive costs is also governed by 28 U.S.C. § 1927,

which dictates that any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct." **28 U.S.C. § 1927.** By their very terms, both Rule 11 and Section 1927 are aimed at attorneys, not litigants (unless they are proceeding *pro se*), and whether to impose sanctions under either provision is left to the discretion of the District Court. *Golden v. Helen Sigman & Associates, Ltd.*, **-- F.3d ----, 2010 WL 2630598, at \*5 (7th Cir. July 2, 2010) (re Rule 11);** *Jolly Group, Ltd. v. Medline Industries, Inc.*, **435 F.3d 717, 720 (7th Cir. 2006) (re Section 1927);** *Nisenbaum v. Milwaukee County*, **333 F.3d 804 810-811 (7th Cir. 2003) ( re both Rule 11 and Section 1927).**

### III. Analysis

#### A. The Appropriate Respondent

As a preliminary matter, the Court must discern against whom sanctions are sought. Defendants' motion is clearly aimed at Plaintiff's counsel's conduct, not Plaintiff himself. Although Plaintiff was represented at various times by three attorneys, the motion does not mention any attorney by name. Only attorney Nelson L. Mitten, the last attorney to represent Plaintiff, was served with the motion. Consequently, the Court construes the motion as being aimed solely at Mr. Mitten.

#### B. The Timeliness of the Motion

Mr. Mitten argues that, relative to Federal Rule of Civil Procedure 11, the motion is untimely because the motion was not filed until after the dismissal of the action.

Upon Plaintiff's stipulation, and with the agreement of Defendants, the Court dismissed the case on October 30, 2009 (Docs. 120, 121). Because the complaint was voluntarily dismissed (without prejudice) by Plaintiff and with the consent of Defendants, final judgment has never been entered. On December 17, 2009, seven weeks after the dismissal, Defendants served the subject motion on Mr. Mitten, asking for reimbursement of fees associated with the defense of the case (Doc. 126-5). The motion was then formally filed on January 15, 2010 (Doc. 122). Mr. Mitten, citing numerous non-controlling precedents and somewhat misreading *Divane v. Krull Electric Co., Inc.*, **200 F.3d 1020, 1025-28 (7th Cir. 1999)**, contends that once the complaint was dismissed he could no longer cure the problems that Defendants took issue with; therefore, the motion was untimely, at least with respect to Rule 11.

Rule 11(c)(1) states that, after notice and an opportunity to respond, sanctions may be imposed. **Fed.R.Civ.P. 11(c)(1).** On its face, Rule 11 does not prescribe a deadline for initiating a Rule 11 motion. However, Rule 11(c)(2) contains a "safe-harbor" provision, dictating that a Rule 11 motion shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate the rule. The motion must first be served on the opposing party and shall not be filed with the Court unless within 21 days after service of the motion (or such other period prescribed by the Court), the challenged document, claim, defense, contention, allegation, or denial is *not* withdrawn or appropriately corrected. **Fed.R.Civ.P. 11(c)(2).** Thus, an attorney must be given an opportunity to cure the problem, and if the problem is cured, then the motion is rendered

moot and should not be filed. Defendants formally filed the motion on January 15, 2010, beyond the 21-day "safe harbor" period prescribed by Rule 11(c)(2), as required (Doc. 122). However, from Mr. Mitten's perspective, there was never an opportunity for cure, because the complaint had been dismissed.

In *Divane*, the principal precedent cited by Mr. Mitten, the Court of Appeals for the Seventh Circuit stated, "Rule 11(c)(1)(A)[1] does *not* specify any time period when a motion for sanctions must be filed, and we see no need to establish one." *Divane,* **200 F.3d at 1025**. More recently, in *Golden,* the Seventh Circuit made a seemingly contradictory statement, describing the 1993 Advisory Committee Notes to Rule 11 as tying the need to file a Rule 11 motion *before* the conclusion of the case to respect for the safe-harbor provision, which would provide an opportunity for cure. *Golden,* **2010 WL 2630598, at \*6.** However, that statement was mere dicta. *Golden* pertained to a delay between filing a motion to dismiss and initiating a Rule 11 motion; the timing aspects of Rule 11(c) were not at issue, and the Court observed that serving a Rule 11 motion before the case was dismissed would preserve such a motion filed after the dismissal of the case. *Id.* Although *Golden* suggests the possibility of a purely monetary cure, *Divane* remains the controlling statement from the Seventh Circuit Court of Appeals regarding the relevant timing aspect of Rule 11(c). Moreover, the wording of Rule 11(c) has not be altered to preclude filing a motion after dismissal of the complaint and/or entry of judgment. As noted in *Divane*,

---

[1]The 1999 version Federal Rule of Civil Procedure 11(c)(1)(A) circa 1999 includes the 21-day safe-harbor provision that now appears as Rule 11(c)(2).

Rule 11(c) does not specify any time period when a motion for sanctions must be filed; therefore, Defendants' motion was timely filed.[2]

### C. Rule 11 as a Discovery Sanction

Even if the Rule 11(c) service, notice and filing requirements are all met prior to the dismissal of the complaint or entry of judgment, the Court has discretion to deny the motion if it was not made in a timely fashion. "[M]otions for Rule 11 sanctions should be filed, 'as soon as practicable after discovery of a Rule 11 violation.'" **Divane, 200 F.3d at 1027 (quoting *Kaplan v. Zenner*, 956 F.2d 149, 151 (7th Cir. 1992)).** Although, with respect to the factual basis for pleadings, it is expected that the Rule 11 motion will normally be filed at the end of litigation. ***Kaplan*, 956 F.2d at 151-52.**

Defendants' motion sets forth a chronology of events from the filing of the original complaint, through the difficult discovery process, noting two unsuccessful motions to dismiss and multiple amendments of the complaint. Most, but not all, of the discovery problems occurred prior to Mr. Mitten's appearance. Defendants assert that, "had Plaintiff's attorney made a reasonable inquiry as to whether Plaintiff had medical evidence supporting his allegations, Defendants' costs in defending this suit could have been wholly avoided from the outset" (Doc. 122, p. 11). The Court construes Defendants'

---

[2]The Court further observes that if Defendants' motion for attorney's fees is assimilated to a post-judgment motion pursuant to Federal Rule of Civil Procedure 54(d)(2), the usual 14-day time period for filing such a motion does not apply to claims for fees and expenses as sanctions for violating the Federal Rules of Civil Procedure or as sanctions under 28 U.S.C. § 1927. **Fed.R.Civ.P. 54(d)(2)(E)*; see also Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1226 (10th Cir. 2006).**

motion as being based on discovery difficulties, *and* the pursuit of a claim that had little or no evidentiary support.

Any attempt to seek sanctions for discovery problems occurring prior to Mr. Mitten's appearance in the case would be an untimely attempt to seek discovery sanctions, appeal the Magistrate Judge's previous rulings not sanctioning Plaintiff (Docs. 60, 61 and 74), and/or seek reconsideration of this Court's Order denying Defendants' motion to dismiss for lack of prosecution (Doc. 95).

Insofar as Defendants seek sanctions for Mr. Mitten's conduct of discovery, the motion is also untimely. Just prior to the dismissal fo the complaint, Defendants filed a motion in limine raising many of the same discovery/evidentiary issues raised in this motion for sanctions (Doc. 116). Defendants could have just as easily filed a motion for discovery sanctions relative to Mr. Mitten's conduct. Because the discovery issues and the pleading issues are intertwined, the merits of Defendants' motion must be addressed further.

### D. The Appropriateness of Sanctions

Defendants assert that, "had Plaintiff's attorney made a reasonable inquiry as to whether Plaintiff had medical evidence supporting his allegations, Defendants' costs in defending this suit could have been wholly avoided from the outset" (Doc. 122, p. 11). Defendants ignore that of the seven claims lodged against them, only three pertain to medical issues (Doc. 75, Counts II, VI and XV). Plaintiff also asserted claims against the Madison County Defendants regarding conditions of his confinement (other than the

deprivation of epilepsy medication) and the alleged coercion of a confession (Doc. 75, Counts V and XIV). Therefore, Defendants could not have entirely avoided the costs of litigation from the outset. In any event, Mr. Mitten's involvement in this action clearly does not warrant sanctions under either Rule 11 or Section 1927.

Mr. Mitten did not enter his appearance in the case until April 10, 2009 – seven months before trial was set to commence (Docs. 88-91). Mr. Mitten entered the case after the final version of the complaint was filed (Doc. 75), after Plaintiff's deposition (Doc. 122-11, pp. 1-3), and after all of the discovery difficulties that formed the basis for Defendants' March 2009 motion to dismiss for lack of prosecution (Doc. 82). In May 2009, the Court acknowledged that the course of litigation had not been smooth or straightforward, and the attorney-client relationship had broken down prior to Mr. Mitten's appearance (Doc. 95, pp. 2, 3). Nevertheless, the Court found that Defendants had failed to show that Plaintiff demonstrated willfulness, bad faith or fault for the lackluster prosecution of the case (Doc. 75, p. 4). The Court did warn that further delay would cause the Court to revisit sanctions with a sterner eye (Doc. 75, p. 3).

Mr. Mitten entered the case and provided long-overdue discovery responses (*see* Doc. 126-1, pp. 1-8). He attempted to cure problems related to contact information for various treating physicians, apparently with limited success, but ultimately those medical providers who could be contacted failed to corroborate the majority of Plaintiff's deposition testimony (*see* Doc. 122-6, pp. 1-4). Defendants attempt to lay fault at Mr. Mitten's door, but the correspondence between the parties' attorneys indicates that Mr. Mitten and

9

defense counsel were simultaneously trying to locate the medical providers Plaintiff mentioned in his discovery responses and deposition testimony (Doc. 126-2, pp. 1-5; Doc. 122-5, pp. 1-2; Doc. 122-6, pp. 1-4; Doc. 122-8, p. 1). Mr. Mitten was not sitting on his hands, attempting to multiply litigation and costs. And, the confusion regarding whether Dr. Segal had ever treated Plaintiff was caused by Dr. Segal (*see* Docs. 126-2, pp. 1-5). As the weaknesses in Plaintiff's list of other medical witnesses became apparent, those witnesses were withdrawn, albeit often at the last minute.

It is difficult to fault Mr. Mitten, given that he was "playing catch-up" and was constrained by an extremely tight pretrial schedule. Again, the Court concludes that Defendants have failed to establish the degree of culpability necessary for the imposition of sanctions against Mr. Mitten under either Rule 11 or Section 1927.

### IV. Conclusion

For these reasons, the Court **DENIES** Defendants' Motion for Award of Attorney's Fees (Doc. 122).

**IT IS SO ORDERED.**

**DATED this 19th day of July, 2010**

                                       **s/Michael J. Reagan**
                                       **MICHAEL J. REAGAN**
                                       **United States District Judge**